UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

LATAVIOUS BEAL,

                Plaintiff,

v.

TRUDY DUQUETTE, et al.,

                Defendants.

_____/

Case No. 2:23-cv-77

Hon. Hala Y. Jarbou

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff was previously granted leave to proceed *in forma pauperis*. (ECF No. 4.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following AMF medical staff:

Nurses Trudy Duquette and Unknown Tatman; Health Unit Supervisor Jamie Monville; and Health Unit Manager Aaron Jeffery. (Compl., ECF No. 1, PageID.2.)

In Plaintiff's complaint, he alleges that while Defendant Duquette was conducting health care rounds on March 2, 2023, she stated to Plaintiff: "Since I don't like you I'm going to have Defendant [Registered Nurse (RN)] Tatman write you a sexual misconduct one of these days." (*Id.*, PageID.3.) Subsequently, on March 15, 2023, during afternoon medication pass, Defendant Duquette stopped at Plaintiff's cell and said: "I told you that I was going to have Tatman write you a sexual misconduct and I'm going to make sure she only targets you since I don't like you." (*Id.*, PageID.3–4.) Plaintiff states that at some unspecified time, Defendant Duquette "had Defendant Tatman write Plaintiff [a] sexual misconduct." (*Id.*, PageID.4.)

Plaintiff wrote medical kites to Defendants Monville and Jeffery, "but they both refused to respond to [Plaintiff's] cry for help in regards of [Defendant] Duquette['s] behavior towards [Plaintiff]." (*Id.*, PageID.3.) Plaintiff "also wrote two grievances on" Defendant Duquette. (*Id.*) Plaintiff alleges that Defendants Monville and Jeffery refused to interview "Plaintiff on both grievances and medical kites." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants Duquette and Tatman violated his First Amendment right to be free from retaliation, that Defendant Duquette violated his Eighth Amendment rights by verbally harassing him, and that Defendants Monville and Jeffery violated his right to due process under the Fourteenth Amendment. (*Id.*, PageID.3–4.) The Court also construes Plaintiff's complaint to raise a claim under the Equal Protection Clause of the Fourteenth Amendment. (*See id.*, PageID.4.) As relief, Plaintiff seeks monetary damages, as well as declaratory and injunctive relief. (*Id.*, PageID.5.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.  First Amendment Retaliation Claims

Plaintiff contends that Defendants Duquette and Tatman retaliated against him in violation of his First Amendment rights. (Compl., ECF No. 1, PageID.3–4.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### 1.  Protected Conduct

With respect to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."). Here, Plaintiff references filing grievances regarding Defendant Duquette's behavior. (Compl., ECF No. 1, PageID.3.) Therefore, at this stage of the proceedings, Plaintiff has alleged sufficient facts to suggest that he engaged in protected conduct for purposes of his First Amendment claim.

4

### 2.    Adverse Action

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002).

The issuance of a misconduct charge can be considered an adverse action. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007); *see also Hill*, 630 F.3d at 474 (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse"). Here, Plaintiff states that Defendant Duquette "had Defendant Tatman write Plaintiff [a] sexual misconduct." (Compl., ECF No. 1, PageID.4.) The issuance of the misconduct ticket constitutes adverse action.

### 3.    Retaliatory Motive

Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct. As explained below, Plaintiff's allegations regarding this third element of a First Amendment retaliation claim fall short.[1]

Here, Plaintiff alleges that on March 2, 2023, Defendant Duquette told Plaintiff: "Since I don't like you I'm going to have Defendant RN Tatman write you a sexual misconduct one of

---

[1] The Court notes that this is not the first time that Plaintiff has raised a First Amendment retaliation claim in a civil rights action in this Court. In addressing Plaintiff's claims in one of his prior actions, the Court advised Plaintiff of all of the elements required to state a First Amendment retaliation claim. *See* Op., *Beal v. Minard*, No. 1:22-cv-1040 (W.D. Mich. Nov. 16, 2022), (ECF No. 5, PageID.48–53).

these days." (Compl., ECF No. 1, PageID.3.) Subsequently, on March 15, 2023, Defendant Duquette told Plaintiff: "I told you that I was going to have Tatman write you a sexual misconduct and I'm going to make sure she only targets you since I don't like you." (*Id.*, PageID.3–4.) At some unspecified time, Defendant Duquette "had Defendant Tatman write Plaintiff [a] sexual misconduct." (*Id.*, PageID.4.) Additionally, at some unspecified time, Plaintiff wrote medical kites "in regards of [Defendant] Duquette['s] behavior towards [Plaintiff]," and he "also wrote two grievances on" Defendant Duquette. (*Id.*, PageID.3.)

Based on the facts alleged by Plaintiff, he fails to allege facts to support an inference that the alleged adverse action—the issuance of the sexual misconduct—was motivated by the protected conduct. As an initial matter, Plaintiff does not allege that the sexual misconduct he was issued was falsified. If Defendants Duquette and Tatman issued this misconduct because Plaintiff had engaged in behavior that warranted the issuance of the sexual misconduct, that would necessarily mean that they did not issue the misconduct for a retaliatory reason.

Furthermore, the facts alleged by Plaintiff in his complaint suggest that any adverse action taken by Defendants Duquette and Tatman was motivated solely by Defendant Duquette's dislike of Plaintiff. Plaintiff provides no explanation about why Defendant Duquette disliked him; he simply alleges that she told him that she did not like him and that he would be issued a misconduct due to her dislike of him. (*See id.*, PageID.3–4.) Plaintiff fails to allege sufficient facts to suggest that Defendant Duquette's animosity was motivated by Plaintiff's engagement in any protected conduct.

Moreover, although, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" the United States Court of Appeals for the Sixth Circuit, has been reluctant to find that temporal proximity

between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Compare Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), *and Briggs v. Westcomb*, No. 19-1837 (6th Cir. Mar. 10, 2020) (unpublished) (holding that allegations of temporal proximity were sufficient where the filing of retaliatory misconduct by correctional officers occurred six days after Plaintiff filed a grievance against a medical provider, but only one day after the provider learned of the grievance), *with Hill*, 630 F.3d at 476 (discussing that the Sixth Circuit has been reluctant to find that temporal proximity alone shows a retaliatory motive).

In this action, Plaintiff does not indicate when he filed the medical kites and two grievances regarding Defendant Duquette, and he does not indicate when he received the sexual misconduct in question. (*See* Compl., ECF No. 1, PageID.3–4.) Plaintiff has therefore failed to allege any facts suggesting any temporal proximity between the two events. Moreover, even assuming that Plaintiff filed the grievances about Defendant Duquette before Defendants Duquette and Tatman took the allegedly adverse action against Plaintiff—suggesting temporal proximity—nothing in the complaint suggests that Defendants Duquette and Tatman were aware that Plaintiff had filed these grievances. Indeed, as discussed above, Plaintiff alleges only that Defendant Duquette told him that she disliked him for an unspecified reason, not that she disliked him because he filed grievances. Instead, Plaintiff merely alleges the ultimate fact of retaliation; however, he alleges no *facts* from which to reasonably infer that Defendants Duquette and Tatman were motivated by any protected conduct. Under these circumstances, even if Plaintiff had alleged a vague suggestion of temporal proximity—which he has not—this would be insufficient to show a retaliatory motive. *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). Such "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*,

420 F.3d 571, 580 (6th Cir. 2005) (citation omitted); *see Murray v. Unknown Evert*, 84 F. App'x

553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A,

"[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to

raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F.

App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not

enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El*

*v. Britton*, 523 U.S. 574, 588 (1998))).

Accordingly, because Plaintiff fails to allege any facts to suggest that Defendants Duquette

and Tatman were motivated by Plaintiff's protected conduct, Plaintiff fails to state a First

Amendment retaliation claim. Plaintiff's First Amendment retaliation claims, therefore, will be

dismissed.

### B.    Eighth Amendment Claim

Plaintiff next alleges that Defendant Duquette violated his Eighth Amendment rights when

she verbally harassed him. (Compl., ECF No. 1, PageID.3.)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against

those convicted of crimes. U.S. Const. amend. VIII. Punishment may not be "barbarous" nor may

it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–

46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the

"unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987)

(per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial

of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson*

*v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with

"deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for

prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every

unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Here, Plaintiff alleges that Defendant Duquette told him that she did not like him on two occasions, and that she told him that she would have Defendant Tatman write Plaintiff a sexual misconduct. (Compl., ECF No. 1, PageID.3–4.) While unprofessional, allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey*, 832 F.2d at 955. Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.

*Id.*; *see Johnson v. Dellafita*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits).

Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendant Duquette, and this claim will be dismissed.

### C. Fourteenth Amendment Claims

#### 1. Due Process Clause

Plaintiff alleges that Defendants Monville and Jeffery violated his right to due process under the Fourteenth Amendment because they "refused to respond to [Plaintiff's] cry for help" in his grievances and refused to interview "Plaintiff on both grievances and medical kites." (Compl., ECF No. 1, PageID.3.)

The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And, Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x

10

405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).

Furthermore, "a claim based on an inadequate investigation fails to state a constitutional violation because private citizens have no constitutional or federal statutory right to compel the investigation of another person." *Miles v. Mitchell*, No. 3:18-CV-P116-CRS, 2018 WL 5929643, at *5 (W.D. Ky. Nov. 13, 2018) (citing, *inter alia*, *Diamond v. Charles*, 476 U.S. 54, 64–65 (1986)); *see also Browder v. Parker*, No. 5:11CV-P29-R, 2011 WL 2379406, at *7 (W.D. Ky. Jun. 15, 2011) ("Private citizens, whether or not they are incarcerated, have no constitutional or federal statutory right to compel the investigation of another person." (citing *Diamond*, 476 U.S. at 64–65; *White v. City of Toledo*, 217 F. Supp. 2d 838, 841 (N.D. Ohio 2002))).

Finally, to the extent that Plaintiff seeks to hold Defendants Monville and Jeffery liable for the actions of their subordinates, government officials, such as Defendants Monville and Jeffery, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any *facts* showing that Defendants Monville and Jeffery encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Plaintiff's vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants Monville and Jeffery were personally involved in the alleged violations of Plaintiff's constitutional rights. Because Plaintiff has failed to allege that Defendants Monville and Jeffery engaged in any active unconstitutional behavior, Plaintiff fails to state a claim against them.

Accordingly, for the reasons set forth above, Plaintiff fails to state a Fourteenth Amendment due process claim against Defendants Monville and Jeffery. Plaintiff's Fourteenth Amendment due process claims will be dismissed.

## 2.    Equal Protection Clause

Although not specifically articulated by Plaintiff, the Court construes Plaintiff's complaint to raise a class-of-one equal protection claim. (Compl., ECF No. 1, PageID.4 (alleging that Defendant Duquette said, "I told you that I was going to have Tatman write you a sexual misconduct and I'm going to make sure she only targets you since I don't like you").)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).

"[T]he hallmark of [a 'class-of-one'] claim is not the allegation that *one individual* was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class." *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (alterations in original) (citations omitted); *see Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) ("The 'class of one' theory . . . is unusual because the plaintiff in a 'class of one' case does not allege that the defendants discriminate against a *group* with whom she shares characteristics, but rather that the defendants simply harbor animus against her *in particular* and therefore treated her arbitrarily." (emphasis in original)). A plaintiff "must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citation omitted).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)). In this action, Plaintiff's equal protection claims are wholly conclusory. Plaintiff fails to allege any facts to demonstrate that his fellow inmates were similar in all relevant aspects. Plaintiff's conclusory allegations simply do not suffice to state a claim.

Accordingly, the Court will dismiss Plaintiff's Fourteenth Amendment equal protection claims.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: May 11, 2023                         /s/ Hala Y. Jarbou
                                            HALA Y. JARBOU
                                            CHIEF UNITED STATES DISTRICT JUDGE